204 N.J. Super. 158 (1985)
497 A.2d 1272
IN THE MATTER OF REPEAL OF N.J.A.C. 6:28 AND ADOPTION OF NEW RULE N.J.A.C. 6:28.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1985.
Decided June 27, 1985.
*160 Before Judges PRESSLER, BRODY and COHEN.
David B. Harris and Stephen M. Eisdorfer, Assistant Deputies Public Advocate, argued the cause for appellant (Amy R. Piro, Acting Public Advocate, attorney; David B. Harris, Stephen M. Eisdorfer and Linda W. Peres, Assistant Deputies Public Advocate on the letter brief).
June Kantor, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The opinion of the court was delivered by COHEN, J.A.D.
A regulation adopted by a state agency is presumed to be reasonable and valid. Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 447 (1984). If procedurally regular, *161 it may be set aside only if it is proved to be arbitrary or capricious or if it plainly transgresses the statute it purports to effectuate, New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978), or if it alters the terms of the statute or frustrates the policy embodied in it. N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 82 (1980).
The Public Advocate challenges regulations adopted by the Department of Education concerning education of the handicapped in public schools and of nonhandicapped residents of state institutions. The challenged regulations are parts of the 1984 comprehensive revision of N.J.A.C. 6:28, entitled Special Education, which was adopted after appropriate proposal, notice, comment and review procedures.
N.J.A.C. 6:28-3.5(e)(8) is the first provision in dispute. It defines "pre-school handicapped" for the purpose of eligibility for local special education and related services as
a condition which seriously impairs a child's functioning and which has a high predictability of seriously impairing normal educational development.
The statute purported to be implemented by the definition is N.J.S.A. 18A:46-6. It provides with regard to pre-school children:
In addition, each board of education shall also identify and ascertain, according to rules promulgated by the commissioner with the approval of the State board, those children between the ages of 3 and 5 years of age who require and who would be benefited by special education programs and services which may prevent their handicaps from becoming more debilitating.
The statute does not require the handicap to be a "serious" one. There is substantial evidence that the Legislature was concerned with early detection and amelioration of less than "serious" handicaps. Available to it was a variety of studies of the benefits of early attention to impairments before they become disabling. The Assembly Education Committee's statement described the proposed N.J.S.A. 18A:46-6 as requiring early intervention to "prevent ... handicaps from becoming more debilitating." The Senate Education Committee added:

*162 ... education for the pre-school handicapped is a program of major significance for the child and for Society. By identifying and assisting these youngsters at an early age, the effects of the handicap can be minimized or even remedied, making later learning more effective, and allowing the individual to lead a more productive life.
The Department of Education meets the objection that its regulation narrows the scope of the statute by invoking its expertise and also by defining the problem away. It argues that children with mild handicaps will nevertheless be chosen for programs because even mild handicaps can cause "serious" impairment of functioning. It calls the Public Advocate's concern a "quibble over semantics" and assures that a child with a worsening condition will be identified as having a "serious" impairment.
The assurance is not enough. It is at heart an assurance that the regulation does not mean what it says and will not be read by the regulated professionals to mean what it says. We find that, on its face, the regulation impermissibly narrows the statutory language and frustrates the policy embodied in it. We are concerned that the professionals will follow its plain meaning rather than its unexpressed intention.
The regulation is also inconsistent with the federal funding legislation, the Education for All Handicapped Children Act of 1975, 20 U.S.C.A. § 1401 et seq., which N.J.S.A. 18A:46-6 was designed to satisfy. The Act requires a state or a local agency seeking eligibility to develop plans to provide all handicapped children with appropriate public education "regardless of the severity of their handicap," 20 U.S.C.A. § 1412(2)(A), § 1412(2)(C), § 1414(a)(1)(A). See Bd. of Educ. of Hendrick Hudson Dist. v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). While the Act obliges states to establish priorities based on the degree of insufficiency of the child's educational experience, 20 U.S.C.A. § 1412(3), it does not permit a state to disregard any of the handicapped.
The next challenged regulation is N.J.A.C. 6:28-3.5(d). It concerns the circumstances in which the staff of a district *163 board of education may terminate special services to a person between three and twenty-one years of age. It provides:
The child study team, after parental notification, shall terminate a pupil's eligibility when sufficient written documentation is presented to indicate that the pupil no longer requires special educational and/or related services.
The authority to terminate services when "sufficient written documentation is presented" runs against the grain of every other enactment on the subject. Federal funding eligibility requirements include detailed provisions for parental participation in the evaluation and placement processes, access to relevant school records, an opportunity for independent evaluation and impartial due process hearings. 20 U.S.C.A. § 1415. Clearly, termination of services is a change in educational placement which invokes these protections. S-1 v. Turlington, 635 F.2d 342, 348 (5 Cir.), cert. den. 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); See Annotation, 54 A.L.R.Fed. 570 (1981); Annotation, 64 A.L.R.Fed. 792 (1983). Federal regulations spell out the requirements. 34 C.F.R. § 104.35; § 104.36; § 300.501 et seq. Our Legislature enacted provisions in N.J.S.A. 18A:46-8 to create procedures consistent with the federal requirements. Department of Education regulations establish detailed procedures dealing with reevaluations, N.J.A.C. 6:28-3.4, parental participation and dispute resolution mechanisms, N.J.A.C. 6:28-2.1 to 2.8.
The Board concedes that all of the elaborate machinery required by federal and state law and regulation apply to terminations of service. It asks us to read N.J.A.C. 6:28-3.5(d) as a part of the total fabric of regulation and thus subject to the procedural requirements elsewhere expressed. The difficulty is that termination "when sufficient written documentation is presented" is so foreign to the regulatory fabric that it can be reconciled only by ignoring it. Like the serious-impairment standard of N.J.A.C. 6:28-3.5(e)(8), the sufficient-written-documentation standard of N.J.A.C. 6:28-3.5(d) can survive only if everyone agrees that it means something other than what it says. Since the regulations are written to be read and followed *164 by nonlawyers in hundreds of school districts across the state, a statewide knowing wink at the plain meaning of the language of the regulation is not a reliable solution. By reason of its inconsistency with federal law, state statute and detailed implementing state regulations, N.J.A.C. 6:28-3.5(d) must be set aside.
The third challenged provision is N.J.A.C. 6:28-2.2, which deals with the problem of parental participation in the special education evaluation and placement process in cases where the child is a ward of the State or a parent cannot be located after reasonable efforts. The regulation states:
(a) Each district board of education shall ensure that the rights of a pupil are protected through the provision of a surrogate parent who shall assume all parental rights under this chapter, when either:
(1) The parent(s) cannot be located after reasonable efforts; or
(2) The pupil is a ward of the State of New Jersey.
(b) Each district board of education shall establish a method for selecting and training surrogate parents.
(c) The person serving as a surrogate parent shall have:
(1) No interest that conflicts with those of the pupil he or she represents;
(2) Knowledge and skills that ensure adequate representation of the pupil.
(d) The person(s) serving as a surrogate parent may not otherwise be employee of the local school district. A surrogate parent may be paid solely to act in that capacity.
The regulation is consistent with federal statute, 20 U.S.C.A. § 1415(b)(1)(B), and regulation, 34 C.F.R. § 300.514. Although "reasonable efforts" are not defined, each case will create its own requirements to flesh out what is in outline a sufficient safeguard against overreaching. It is significant that the surrogate parent has powers only to participate in N.J.A.C. 6:28 proceedings concerning special education services, that the appearance of a parent will terminate a surrogate's authority and that the definition of parent, which the regulation does not provide, must be the definition contained in 34 C.F.R. § 300.10 and adopted for this purpose in 34 C.F.R. § 300.514. We hold that the challenged regulation is valid.
The fourth challenged regulation arises under the State Facilities Education Act of 1979, N.J.S.A. 18A:7B-1, et. seq. The *165 purpose of the Act is to assure a thorough and efficient education, N.J. Const., Art. 8, § 4, par. 1, for all pupils, handicapped and nonhandicapped, who reside in state institutions. The Commissioner of Education, with the approval of the State Board of Education, is directed to promulgate rules and regulations for the purpose. N.J.S.A. 18A:7B-5. Actual operation of education programs is the responsibility of the Department of Corrections and the Department of Human Services. N.J.S.A. 18A:7B-8 and 18A:7B-9.
In September 1983, the Commissioner promulgated N.J.A.C. 6:28-10.1 et seq. to be effective for one year only. It provided a detailed set of operational educational standards for programs for the handicapped and nonhandicapped in state facilities and satisfied the concerns of the Public Advocate. The original regulations were later repealed and replaced with the comprehensive N.J.A.C. 6:28-8.1 et seq. The new regulations concentrated on the handicapped and included only two provisions dealing with nonhandicapped students. They stated:
All educationally nonhandicapped pupils in State facilities shall receive an educational program in according to N.J.A.C. 6:8 (Thorough and Efficient System of Free Public Schools). [N.J.A.C. 6:28-8.1(d)]
The educational rights of nonhandicapped pupils to procedural safeguards are the same as nonhandicapped pupils in local district schools in New Jersey. [N.J.A.C. 6:28-8.3(d)]
The Public Advocate complains that the first detailed regulations should not have been abandoned in favor of laconic generalities referring to other regulations which do not give responsibilities to the Departments of Correction and Human Services. Not so. The new regulations incorporate the detailed "thorough and efficient" regulations and give to the operating departments the same obligations, mutatis mutandis, as are imposed on the local district boards of education. Although the language employed may create minor uncertainty from time to time, the regulatory scheme incorporated by reference is consistent with the statute and will be upheld. We note that the regulation was designed by the Department of *166 Education as an interim measure and that more detailed regulations are now being prepared.
We set aside N.J.A.C. 6:28-3.5(e)(8) and N.J.A.C. 6:28-3.5(d). We sustain the validity of N.J.A.C. 6:28-2.2 and 6:28-8.1(d) and N.J.A.C. 6:28-8.3(d).