NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2816-12T3

EDUCATION LAW CENTER on behalf
of ABBOTT V. BURKE PLAINTIFF
SCHOOLCHILDREN,

     Appellant,

v.

NEW JERSEY STATE BOARD OF
EDUCATION and CHRISTOPHER D.
CERF, COMMISSIONER, NEW JERSEY
DEPARTMENT OF EDUCATION,

     Respondents.

---

| APPROVED FOR PUBLICATION |
| --- |
| November 12, 2014 |
| APPELLATE DIVISION |

---

Argued October 8, 2014 — Decided November 12, 2014

Before Judges Fuentes, Ashrafi, and Kennedy.

On appeal from the adoption of N.J.A.C.
6A:11-1.2 and 6A:11-2.6(a)(1)(iv), and the
repeal of N.J.A.C. 6A:11-2.6(a) by the New
Jersey State Board of Education.

Elizabeth Athos argued the cause for
appellant (Education Law Center, attorneys;
Ms. Athos and David G. Sciarra, on the
brief).

Lauren A. Jensen, Deputy Attorney General,
argued the cause for respondents (John J.
Hoffman, Acting Attorney General, attorney;
Michelle Lyn Miller, Assistant Attorney
General, of counsel; Ms. Jensen, on the
brief).

Benjamin Yaster argued the cause for amicus curiae Save Our Schools New Jersey (Gibbons P.C., attorneys; Mr. Yaster and Lawrence S. Lustberg, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

In this appeal, we consider whether the New Jersey State Board of Education could lawfully adopt regulations to permit existing, successful charter schools to open satellite locations within their districts of residence. We conclude the regulations are a valid exercise of the State Board's administrative authority.

The Education Law Center (ELC) challenges the State Board's adoption of two amended regulations and the repeal of a third applicable under the Charter School Program Act of 1995 (the Act), N.J.S.A. 18A:36A-1 to -18. Save Our Schools New Jersey, which describes itself as a volunteer-led organization of parents and concerned residents of New Jersey, supports ELC's appeal as an amicus curiae.

ELC and Save Our Schools contend that the State Board exceeded its statutory authority and acted arbitrarily and capriciously when it: (1) amended N.J.A.C. 6A:11-2.6(a)(1)(iv) to authorize the addition of satellite campuses to some existing charter schools; (2) amended N.J.A.C. 6A:11-1.2 to define the

term "satellite campus"; and (3) repealed N.J.A.C. 6A:11-2.6(a)(2), which had barred existing charter schools from amending their charters to alter the mission, goals, or objectives of the school. ELC and Save Our Schools contend that the revised regulations are an expansion of the charter school program and that such an expansion may be accomplished only by the Legislature enacting new laws, not by the State Board and the Commissioner of Education through administrative action. Save Our Schools adds that the regulatory amendments risk creating charter schools that will fail, and the failures will have a disproportionate impact on impoverished school children in under-performing school districts.

We conclude that the State Board had the statutory authority to amend and repeal its regulations as it did, and that the speculative policy arguments advanced by Save Our Schools may be better addressed to the Legislature or to individual charter school expansions than as a facial attack on the amended regulations. We affirm the State Board's action in adopting and repealing the challenged regulations.

I.

"A charter school [is] a public school operated under a charter granted by the [C]ommissioner [of Education], which is operated independently of a local board of education and is

managed by a board of trustees." N.J.S.A. 18A:36A-3(a).

Charter schools are funded primarily by taxes collected from the

public that would otherwise fund traditional public education.

See N.J.S.A. 18A:36A-12.  A charter school may not enroll

students on the basis of selective criteria such as

"intellectual or athletic ability," and it may not discriminate

on the basis of "measures of achievement or aptitude, status as

a handicapped person, proficiency in the English language, or

any other basis that would be illegal if used by a [public]

school district."  N.J.S.A. 18A:36A-7.  A charter school may,

however, "limit admission . . . to areas of concentration of the

school, such as mathematics, science, or the arts," and it may

"establish reasonable criteria to evaluate prospective

students."  Ibid.

The legislative purpose of authorizing charter schools is

to promote educational reform "by providing a mechanism for the

implementation of a variety of educational approaches which may

not be available in the traditional public school classroom."

N.J.S.A. 18A:36A-2.  The Legislature found that "the

establishment of a charter school program is in the best

interests of the students of this State and it is therefore the

public policy of the State to encourage and facilitate the

development of charter schools."  Ibid.

The Legislature granted to the State Board the authority to adopt such rules and regulations as are "necessary to effectuate the provisions of" the enabling legislation. N.J.S.A. 18A:36A-18. The first series of regulations under the Act were adopted by the State Board in July 1997. 29 N.J.R. 3492(a) (Aug. 4, 1997); N.J.A.C. 6A:11-1.1 to -6.4.

Together with the statutory criteria, see N.J.S.A. 18A:36A-4, -4.1, -5, the regulations subject a proposed charter school to a rigorous application process. See N.J.A.C. 6A:11-2.1. Among the many requirements, the application must state the school's educational goals and objectives, the admission criteria for students, the assessment methods that will determine whether students are achieving the stated goals of the school, and the address and description of the physical building in which the school will be located. Ibid. The application process also includes an in-depth interview of representatives of the school with the Commissioner of Education and a preparedness visit with personnel from the Department of Education. Ibid.

Once a charter school has been established, the Commissioner must assess annually whether the school is meeting the goals stated in its charter. N.J.S.A. 18A:36A-16(a). If the school violates any provision of its charter, the

Commissioner may revoke the charter, place the school on probationary status, require the school to take corrective action, or reject renewal of the charter for a subsequent term. N.J.S.A. 18A:36A-17.

Since adoption of the original implementing regulations in 1997, charter schools have been permitted to "apply to the Commissioner for an amendment to the charter . . . ." N.J.A.C. 6A:11-2.6; 29 N.J.R. 3492(a). However, the original regulations prohibited an amendment that would alter the mission, goals or objectives of the existing charter school, N.J.A.C. 6A:11-2.6(a)(2) (repealed), and they made no reference to satellite campuses. 29 N.J.R. 3492(a).

The Department of Education proposed the challenged regulatory changes in May 2012 by means of the formal process for amending the charter school regulations. See N.J.A.C. 6A:6-3.1. ELC submitted written comments to the State Board opposing "strongly" the proposed new regulations on the ground that they permitted expansion of the State's charter school program through regulation rather than legislative action. The State Board reviewed comments from ELC and others and made some changes to the proposed amendments, but it did not rescind or modify the proposed regulatory changes that are the subject of this appeal. After the State Board published notice of the

proposed amendments in the New Jersey Register, 44 N.J.R.

2151(a) (Sept. 4, 2012), a sixty-day public comment period

opened, and the State Board took public testimony on the

proposed changes.  Over ELC's continuing objections, the State

Board amended N.J.A.C. 6A:11-2.6(a) on December 5, 2012, to

authorize satellite campuses in some school districts.  45

N.J.R. 26(a) (Jan. 7, 2013).

As amended, N.J.A.C. 6A:11-2.6(a) now states:

> A charter school may apply to the
> Commissioner for an amendment to the charter
> following the final granting of the charter.
> 1.  Examples of what a charter school may
> seek an amendment include, but are not
> limited to, the following:
>
> i.   Expanding enrollment;
> ii.  Expanding grade levels;
> iii. Changing or adding a district or region
> of residence; or
> iv.  Opening a new satellite campus.

The Board also defined the term "satellite campus,"

limiting its application to certain school districts in

underprivileged areas:

> "Satellite campus" means a school facility,
> located within a district with a priority
> school[1] or a former Abbott District as of

---

[1] "Priority school" is defined as "a school that demonstrates very low levels of success in either school wide student proficiency rates or overall graduation rates as determined by criteria at N.J.A.C. 6A:33-2.1(b)."  N.J.A.C. 6A:33-1.3.

July 1, 2012,[2] operated by a charter school under the school's charter that is in addition to the facility identified in the charter school application or charter, if subsequently amended.

[N.J.A.C. 6A:11-1.2.]

Lastly, the Board repealed N.J.A.C. 6A:11-2.6(a)(2), which previously stated that an "amendment shall not change the mission, goals and objectives of a charter school."

## II.

ELC asserts that the State Board exceeded its statutory authority in adopting the satellite campus regulations, and acted arbitrarily and capriciously in repealing N.J.A.C. 6A:11-2.6(a)(2). Save Our Schools adds that the "regulations, as written . . . in effect, allow[] new charter schools to be created under the guise of 'satellite campuses' without being subjected to the rigorous application and review process that the Legislature envisioned." See In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 374-77 (2013); N.J.A.C. 6A:11-2.1. The Board responds that "satellite

---

[2] "[F]ormer Abbott District" refers to the thirty-one New Jersey public school districts that were designated as "special needs" or "Abbott districts," Abbott v. Burke, 196 N.J. 544, 548, 563 (2008), for purposes of receiving State funding and implementing programs to improve the educational services provided in those districts. The Legislature's adoption of the School Funding Reform Act of 2008, N.J.S.A. 18A:7F-43 to -63, supplanted the designation of "Abbott districts." See Abbott v. Burke, 206 N.J. 332 (2011).

campuses are directly in line with the express legislative polices underlying the [Act]."

In an appeal such as this, we are not "bound by [a government] agency's interpretation of a statute or its determination of a strictly legal issue." Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011) (quoting Mayflower Sec. Co. v. Bureau of Sec. 64 N.J. 85, 93 (1973)). "[W]e apply de novo review to an agency's interpretation of a statute or case law." Ibid. Our "obligation is to determine and give effect to the Legislature's intent" in enacting the statute. N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012); see also Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012) (the court's "paramount goal in interpreting a statute is to give effect to the Legislature's intent.").

At the same time, we must accord deference to administrative agency actions, including the agency's adoption of regulations and rules to implement legislative directives. "That approach reflects the specialized expertise agencies possess to enact technical regulations and evaluate issues that rulemaking invites." Schundler, supra, 211 N.J. at 549. An agency's regulations carry a presumption of validity, and the burden is on the challenging party to rebut that presumption. Id. at 548.

A properly adopted regulation may only be set aside "if it is proved to be arbitrary or capricious or if it plainly transgresses the statute it purports to effectuate . . . or if it alters the terms of the statute or frustrates the policy embodied in it."  In re Repeal of N.J.A.C. 6:28, 204 N.J. Super. 158, 160-61 (App. Div. 1985) (citing N.J. Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 82 (1980); N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978)).  A regulation frustrates a statute when it is inconsistent with the statute, extends the statute beyond the Legislature's intent, or "violates . . . express or implied legislative policies."  See In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:82-4.1, 117 N.J. 311, 325 (1989); accord N.J. Ass'n of Sch. Adm'rs v. Cerf, 428 N.J. Super. 588, 596 (App. Div. 2012), certif. denied, 213 N.J. 536 (2013).

The Legislature's grant of administrative authority is construed liberally "to enable the agency to accomplish its statutory responsibilities and . . . effectuate fully the legislative intent."  Hearing Aid Dispensers, supra, 75 N.J. at 562.  In assessing the scope of delegated authority, courts "look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives."  Ibid.

"[T]he absence of an express statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 223 (1999) (quoting A.A. Mastrangelo, Inc., v. Comm'r, Dep't of Envtl. Prot., 90 N.J. 666, 683-84 (1982)).

In conjunction with these principles of administrative law, the usual rules of statutory interpretation require courts first to examine the plain language of a statute. Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 448 (2012). If the plain language is clear, that meaning must be given effect, and the court's inquiry is complete. O'Connell v. State, 171 N.J. 484, 488 (2002).

In this case, the plain language of the pertinent statutes does not resolve the dispute. The Legislature granted to the State Board the authority to promulgate regulations and amendments to the charter school program. N.J.S.A. 18A:36A-18. The Legislature did not expressly authorize satellite campuses, but it also did not expressly prohibit them.

The State Board emphasizes the Legislature's overarching purpose to encourage and facilitate the development of charter

schools.  The Act expressly set forth its purposes in N.J.S.A.

18A:36A-2, the Legislature finding and declaring that:

> [T]he establishment of charter schools as part of this State's program of public education can assist in promoting comprehensive educational reform by providing a mechanism for the implementation of a variety of educational approaches which may not be available in the traditional public school classroom.  Specifically, charter schools offer the potential to improve pupil learning; increase for students and parents the educational choices available when selecting the learning environment which they feel may be the most appropriate; encourage the use of different and innovative learning methods; establish a new form of accountability for schools; require the measurement of learning outcomes; make the school the unit for educational improvement; and establish new professional opportunities for teachers.

ELC acknowledges these purposes of the Act but argues that other statutory provisions demonstrate the Legislature's intent not to permit expansion of the charter school program without its own express approval.  ELC points to the specificity of the procedures laid out for establishing a charter school, N.J.S.A. 18A:36A-4, and the detailed, wide-ranging information that must be included in an application for a charter, N.J.S.A. 18A:36A-5. It also cites a subsection of the Act expressly prohibiting expansion or modification of the charter school program without prior legislative approval.  N.J.S.A. 18A:36-16(e).

If this last-cited statutory provision expressly prohibits any action by the State Board that has the effect of expanding the charter school program, our inquiry is at an end — satellite campuses are not permitted.  But we do not read N.J.S.A. 18A:36A-16(e) as ELC urges.  ELC cites the concluding sentence of that subsection, which states: "The commissioner may not implement any recommended expansion, modification, or termination of the program until the Legislature acts on that recommendation."  But as the State Board argues, the quoted sentence should not be read in isolation from the rest of N.J.S.A. 18A:36A-16 and the entire Act.

Subsection (a) of N.J.S.A. 18A:36A-16 requires that the Commissioner annually assess and conduct a comprehensive review of each charter school.  Subsection (b) requires each charter school to submit an annual report to the Commissioner and others to facilitate the Commissioner's assessment and review.  With respect to the specific issue raised in this appeal, in subsections (c) through (e), the Legislature directed a review of the entire, State-wide charter school program.  Those subsections directed the Commissioner to hold public hearings by April 1, 2001, as a part of a comprehensive review of the State's entire charter school program; to "commission an independent study of the charter school program"; and to issue

to the Governor, the Legislature, and the State Board by October 1, 2001, "an evaluation of the charter school program."

The requirement for a State-wide review, six years after the Legislature authorized charter schools in 1995, was enacted as an amendment to the Act in 2000. L. 2000, c. 142, § 3 (effective Nov. 2, 2000). The Legislature set deadlines in 2001 for the Commissioner's evaluation and report, which was to contain specific, listed items of information based on public hearings and the Commissioner's independent study of the State-wide program. N.J.S.A. 18A:36A-16(e). The prohibition specified in the last sentence of subsection (e) refers to that six-year report and its recommendations. It does not refer generally to any modification of the charter school program that may otherwise be authorized by the Act.

A broad reading of N.J.S.A. 18A:36A-16(e) as ELC urges would contravene the legislative purpose of encouraging innovative educational methodology through the charter school program. See In re Grant of Charter to Merit Preparatory Charter Sch. of Newark, 435 N.J. Super. 273, 281 (App. Div.), certif. denied, ___ N.J. ___ (2014). We do not read the Act as requiring legislative action for every type of amendment to existing school charters that might have the effect of expanding the school's educational program.

Making a more concrete argument, ELC contends that the Act did not authorize expansion of an existing charter school beyond its initially-approved physical building. ELC contends the term "charter school" means "one building" because the historic meaning of "school" is a single building. We are not persuaded. The Act authorizes charter schools to acquire by purchase, lease, or gift real property for use as a school facility, either from public or from private sources. N.J.S.A. 18A:36A-6(c). The Act does not limit charter schools to acquiring only one building.

Furthermore, nothing in the Act or the prior regulations prohibits an existing charter school from expanding its operations with the acquisition or use of additional buildings rather than expanding only within its original building. In the case of an existing charter school that seeks to expand into additional physical space, it makes little sense to require a whole new application and the resulting review process. While a satellite campus is not the same as expanding into additional physical space immediately adjacent to the existing facility, the satellite campus would still be part of the same school. A school is more than a building. It is an educational program, and the teaching, administrative, and operational staff that devises and runs the program. Site unity is an appropriate

A-2816-12T3

consideration in evaluating the potential success or problems of a proposed charter school, but a remote site does not make a wholly different school.

More to the point, "[i]n determining whether a particular administrative act enjoys statutory authorization, the reviewing court may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved."  Hearing Aid Dispensers, supra, 75 N.J. at 562.  Here, the Legislature intended that the Act provide options and opportunities of public education for parents and children.  See Merit Preparatory Charter Sch., supra, 435 N.J. Super. at 281. Permitting the addition of a new building for purposes of expanding a successful charter school is consistent with these legislative purposes of the Act.

Neither the Act nor the prior regulations prohibited a charter school from expanding its services by means of an amendment to its charter.  We are persuaded by the State Board's argument that: "Under the charter amendment regulations, charter schools have long been permitted to apply for amendments to increase enrollment, add additional grade levels, and add or change a district of residence," and "permitting certain [existing, successful] charter schools to establish a satellite campus is . . . a natural extension of the schools' ability to

expand enrollment and grade levels."  Thus, according to the State Board, "the establishment of a satellite campus is simply another means through which a high performing charter school may seek to expand."

ELC and Save Our Schools express strong misgivings about permitting expansion to new locations by means of amendment of a school's charter rather than by the school submitting an initial application pursuant to the Act for the satellite location. They claim the amendment procedure shortcuts the Legislature's intent that charter schools undergo a rigorous and searching application process.  See J.D. ex rel. Scipio-Derrick v. Davy, 415 N.J. Super. 375, 380-81 (App. Div. 2010).  They contend that a correct reading of the Act requires that the State Board and the Department of Education conduct a full initial review before a satellite location can be approved.

The State Board responds that a repetition of the full application process is not needed because an existing charter school has already undergone that review and, what is more, a satellite campus would be authorized only for an existing charter school that has proven it can operate successfully.  The State Board argues that beginning a new application process would unnecessarily hamper expansion of successful charter schools that seek to serve more pupils.

We agree that the addition of a satellite campus is more like the expansion of grade and enrollment levels than the opening of an entirely new charter school. Contrary to ELC's argument, the amended regulations do not allow a satellite campus in a district other than in the district or region already served by an existing charter school. The State Board acknowledged in its brief and in oral argument before us that the definition of "satellite campus" in N.J.A.C. 6A:11-2.1 refers to a separate location but in the same school district as the existing charter school, or within the contiguous school districts that are the regional district of residence of a charter school.[3] ELC expresses unfounded fear that the Commissioner will approve "far flung" satellite campuses without adequate evaluation of the proposed building, the demographics of the area, the school program, and the school staff.

Save Our Schools is concerned that the Commissioner and the Department of Education will not adequately evaluate satellite campuses for the physical safety and suitability of the site for educational use. This argument is speculative and not borne out

[3] A charter school is located in a "district of residence," which is defined as "the school district in which a charter school facility is physically located; if a charter school is approved with a region of residence comprised of contiguous school districts, that region is the charter school's district of residence." N.J.A.C. 6A:11-1.2.

by any facts. In proposing the amended regulations, the Department of Education commented: "Facilities identified by an amendment request for a satellite campus are subject to the same review and approval procedures for new charter school facilities . . . ." 45 N.J.R. 26(a). We must assume the Commissioner will require an adequate evaluation of a proposed satellite campus site and reject any charter amendment that fails to meet appropriate standards for a school building. If a proposed campus presents safety concerns or is otherwise unsuitable for the educational needs of children, Save Our Schools or other interested parties should raise specific objections to the proposed amended charter.

Similarly, Save Our Schools argues that the charter amendment procedures circumvent the constitutional requirement that the Commissioner take into account the potential effect of a charter school on this State's anti-discrimination laws and policies. It posits that, because the regulations only allow satellite campuses to open "within a district with a priority school or former Abbott District," N.J.A.C. 6A:11-1.2, "the increased risk of charter school failure at satellite campuses will be borne disproportionately by impoverished communities and communities of color."

As our Supreme Court recently explained, constitutional and statutory law imposes requirements with which the Commissioner must comply when evaluating an application for a charter school:

> First, the Commissioner must assess the racial impact that a charter school applicant will have on the district of residence in which the charter school will operate and must use the full panoply of [his or her] powers to avoid segregation resulting from the grant of a charter school application. Second, if the local school district demonstrates with some specificity that the constitutional requirements of a thorough and efficient education would be jeopardized by [the district's] loss of the funds to be allocated to a charter school, the Commissioner is obligated to evaluate carefully the impact that loss of funds would have on the ability of the district of residence to deliver a thorough and efficient education.
>
> [Quest Academy Charter Sch., supra, 216 N.J. at 377-78 (quotation marks and citations omitted).]

In Quest Academy, the Supreme Court acknowledged that the Commissioner had promised to be "exceedingly careful in the approval of charter schools because of the impact that a wrong decision will have on students who attend a charter school that falters, or worse, fails to provide an educational program that satisfies the constitutional standard of a thorough and efficient education." Id. at 388. Charter amendments are not approved without careful review by the Department of Education and the Commissioner, and the public's opportunity to

20                                                              A-2816-12T3

participate through their representatives on the local board of education. See N.J.A.C. 6A:11-2.6(c). The Legislature granted to the Commissioner discretion initially to approve or reject a charter and further discretion to approve or reject amendments to a charter. We have no basis on this record to speculate that the Commissioner will not apply statutory and constitutional requirements when reviewing a proposed amendment to add a satellite campus to an existing charter school.

ELC and Save Our Schools argue, nevertheless, that the amended regulations do not require notice of a proposed charter amendment to be disseminated to all the same persons and entities as the notices that must be served for an initial application for a charter. For purposes of an initial application, the applicant must serve notice on the "the Commissioner and the local board of education." N.J.S.A. 18A:36A-4(c). In turn, the Commissioner must notify "the members of the State Legislature, school superintendents, and mayors and governing bodies of all legislative districts, school districts, or municipalities in which there are students who will be eligible for enrollment in the charter school." Ibid. In contrast, a proposed amendment to an existing school charter requires notice only to "the Commissioner and the district board(s) of education or State district superintendent(s) of the

district of residence of a charter school." N.J.A.C. 6A:11-2.6(a)(2).

We cannot say that notice of all charter amendments should be disseminated as widely as the notice of an original application. Some amendments may be minor, and the array of persons and offices receiving notice of the initial application are unlikely to be interested in each such modification of a charter. Because the local boards where the charter school is located will receive notice of a proposal to add a satellite campus, there is little danger that the narrower notice requirements for amendments will allow a charter school to sneak unannounced into a new location by means of a satellite campus. We will not interfere with the administrative authority of the State Board and impose stricter notice requirements on the amendment process in the absence of evidence that the current requirement is inadequate.

Finally, ELC and Save Our Schools argue that the State Board's repeal of N.J.A.C. 6A:11-2.6(a)(2) was arbitrary and capricious because the charter amendment process should never be used to change "the mission, goals and objectives of a charter school." In its responses to public comment on the new regulations, the Department of Education explained that the restriction contained in the prior regulation "runs counter to

the Department's goal of enabling charter schools to continuously improve and grow quality programs."  44 N.J.R. 2151(a).

Nothing in the enabling legislation required that the "mission, goals and objectives of a charter school" remain static as initially set forth in the school's application.  As a charter school expands, its original mission statements may also require expansion.  The repeal of N.J.A.C. 6A:11-2.6(a)(2) was no doubt intended to eliminate an obstacle to favorable expansion or modification of a charter school's program.  It was within the authority of the State Board, and not an arbitrary or capricious administrative action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2816-12T3