**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2041-24

TRENTON STEM-TO-CIVICS
CHARTER SCHOOL,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF EDUCATION,

     Respondent-Respondent.

_____

Argued September 22, 2025 – Decided October 1, 2025

Before Judges Sabatino, Walcott-Henderson and Bergman.

On appeal from the New Jersey Commissioner of Education.

Andrew W. Li argued the cause for appellant (Comegno Law Group, PC, attorneys; Andrew W. Li, on the briefs).

Kevin F. Milton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Christopher Weber, Assistant

Attorney General, of counsel, and Kevin F. Milton, on the brief).

PER CURIAM

This appeal concerns the closure of a charter school. Appellant, Trenton STEM-to-Civics Charter School ("STEMCivics"), seeks reversal of the January 31, 2025 final agency decision of the Commissioner of the New Jersey Department of Education ("DOE" or "the Department") revoking STEMCivics's charter. The revocation occurred after STEMCivics had unsuccessfully attempted to cure its deficiencies in a probationary period that began in February 2023. In July 2025, the Supreme Court denied a stay of the Commissioner's revocation order pending appeal.

Although the school has been closed and its students are now enrolled elsewhere, STEMCivics has continued to pursue the present appeal. In essence, STEMCivics argues the Commissioner's decision is arbitrary and capricious and that the record lacks sufficient credible evidence to support revocation under the criteria of the applicable statutes and regulations. We affirm.

I.

We begin with a brief overview of the statutory and regulatory context. "A charter school [is] a public school operated under a charter granted by the [Commissioner], which is operated independently of a local board of education

and is managed by a board of trustees." Educ. L. Ctr. ex rel. Burke v. N.J. State Bd. of Educ., 438 N.J. Super. 108, 112 (App. Div. 2014) (quoting N.J.S.A. 18A:36A-3(a)). The oversight of charter schools in New Jersey is governed by the Charter School Program Act, N.J.S.A. 18A:36A-1 to -18 ("CSPA"). In enacting the CSPA in 1995, the Legislature declared that the "establishment of a charter school program is in the best interests of the students of this State and it is therefore the public policy of the State to encourage and facilitate the development of charter schools." N.J.S.A. 18A:36A-2. To that end, the State Board of Education has enacted a series of rules to govern the implementation of the CSPA. See N.J.S.A. 18A:36-A-18; N.J.A.C. 6A:11-1.1 to -6.4.

N.J.S.A. 18A:36A-4 outlines the procedure for applying to establish a charter school and bestows the Commissioner final authority to grant or reject an initial charter application. An associated regulation, N.J.A.C. 6A:11-2.1, details the extensive charter application and approval process. N.J.S.A. 18A:36A-17 provides that the Commissioner's initial grant of a charter is for a four-year period. Absent an exemption granted by the Commissioner (not applicable here), a charter school must "operate in accordance with its charter and the provisions of law and regulation which govern other public schools[.]" N.J.S.A. 18A:36A-11(a).

Once a charter has been granted, the Commissioner must annually assess and conduct a comprehensive review of the school to determine whether the school is meeting the goals stated in its charter. N.J.S.A. 18A:36A-16(a). It is left to the Commissioner to "develop procedures and guidelines for the revocation and renewal of a school's charter." N.J.S.A. 18A:36A-17. If the Commissioner finds that a charter school is not operating in compliance with its charter or has failed to fulfill a condition in connection with granting the charter, the Commissioner may revoke the school's charter or place the school on what is termed "probationary status" to implement a remedial plan. Ibid.; see also N.J.A.C. 6A:11-2.4(a).

If a charter school is placed on probationary status, it must submit a remedial plan within fifteen days from receipt of the notice of placement on probation, and "provide the specific steps, within the remedial plan, that it shall undertake to resolve the condition(s) not fulfilled and/or the violation(s) of its charter." N.J.A.C. 6A:11-2.4(a)(2)-(3). The Commissioner can then choose to: (1) remove the school's probationary status if the school presents sufficient evidence that the terms of probation have been met and the causes for the probationary status are corrected; (2) extend the probationary period if the charter school has implemented its remedial plan but needs additional time to

implement its corrections; or (3) revoke the charter if the remedial plan is insufficient or if its probation terms have not been met. N.J.A.C. 6A:11-2.4(a)(4)-(6).

The regulations specify that the Commissioner may revoke a school's charter if it finds:

> 1. Any condition imposed by the Commissioner in connection with the granting of the charter that has not been fulfilled by the school;
>
> 2. Violation of any provision of its charter by the school;
>
> 3. Failure of the remedial plan to correct the conditions that caused the probationary status. The Commissioner may place a school on probation before charter revocation, but probationary status is not necessary for revocation; or
>
> 4. Failure of the charter school to meet any standards set forth in its charter agreement or the Performance Framework.
>
> [N.J.A.C. 6A:11-2.4(b).]

The regulations also delineate the procedures to be followed when a charter is revoked. Among other things, those procedures include notifying the school's board of trustees, which must then complete numerous administrative tasks related to the closure, such as notifying affected students and families and assisting them with their enrollment at other schools. N.J.A.C. 6A:11-2.4(c).

5

II.

STEMCivics was founded in 2014, initially as a high school serving ninth through twelfth grade students. In 2018, STEMCivics expanded to include a middle school, serving sixth through eighth grade students. Approximately 98% of STEMCivics's student population came from the Trenton Public School District. The school's stated mission was to utilize "STEM as a motivator to promote academic excellence and inspire civic engagement to ensure students are ready for college and careers."

In October 2022, STEMCivics applied to renew its charter. At that point, the school was in its ninth year of operation.

On February 1, 2023, then-Acting DOE Commissioner Angelica Allen-McMillan renewed STEMCivics's charter for an additional five years, but also placed the school on probationary status. In doing so, the Acting Commissioner compared the school's performance on the New Jersey Student Learning Assessment ("NJSLA") with that of the Trenton Public Schools and the statewide average.[1] The Acting Commissioner identified many concerns

---

[1] The NJSLA is statewide testing utilized to measure student progress towards New Jersey Student Learning Standards ("NJSLS") in English Language Arts ("ELA"), mathematics, and science. See N.J.A.C. 6A:8-1.2(d) ("Progress toward meeting the NJSLS shall be measured by the Statewide assessment

regarding the school's performance on statewide assessments and various other metrics relating to the school's academic performance. The metrics include, for example, student engagement, classroom management, teacher retention, student attrition, and out-of-school suspension rates.

Among other things, the Acting Commissioner noted that, in 2022, STEMCivics had 17.5% ELA proficiency, Trenton Public Schools had 10.5%, and the statewide average was 48.9%. Also in 2022, STEMCivic's mathematics proficiency was then 1.6%, whereas Trenton Public Schools was at 6.4%, and the statewide average was 35.4%. The Acting Commissioner also noted that, in 2019, STEMCivics had 20.5% ELA proficiency and Trenton Public Schools had 20%, whereas the statewide average was then 57.9%.[2] Based upon this academic review, the Acting Commissioner expressed "considerable concern" for the school's "ability to provide high quality instruction across all content areas." She further stated that the DOE would "continue to monitor the percent of

---

system at grades 3 through 12 . . . ."); N.J.A.C. 6A:8-4.1 (requiring the Commissioner to "implement a system and related schedule of Statewide assessments to evaluate student achievement of the NJSLS"). NJSLS, in turn, sets the State's learning standards across nine areas of discipline. N.J.A.C. 6A:8-1.1; N.J.A.C. 6A:8-1.2.

[2] STEMCivics's mathematics scores for that year were "suppressed" as not "in accordance with Every Student Succeed Act (ESSA) accountability guidelines."

A-2041-24

students meeting or exceeding proficiency on statewide assessments toward demonstrable gains in the next charter term."

Additionally, the Acting Commissioner concluded in February 2023 that STEMCivics was not complying with its charter mission. For instance, during a DOE visit, the agency observed that many classrooms failed to incorporate the STEM curriculum, involved low student engagement, "and lacked rigorous materials and pedagogical practices that foster mastery of [NJSLS]." DOE personnel also noted "minimal participation in critical thought," which was contrary to the school's mission of preparing students "for college and careers."

The Acting Commissioner generally reviewed the school under what is known as the "Performance Framework," a set of standards developed by the DOE to ensure that every New Jersey charter school is serving students by providing a high-quality public education.[3] The Performance Framework measures a school functioning in three distinct areas—academic, financial, and organizational. This framework is applied when reviewing charter school applications, overseeing existing schools, and considering renewing, expanding, or closing a school.

---

[3] The Performance Framework is referenced in various regulations. See N.J.A.C. 6A:11-1.2; N.J.A.C. 6A:11-2.2 to -2.4.

In placing STEMCivics on probation, the Acting Commissioner questioned whether the school had "established a well-functioning organizational structure that leads to continuous improvement," noting its 66% teacher retention rate and that its roster included eighteen teachers with substitute credentials. Moreover, the Acting Commissioner also identified instances of classroom disruptions or inappropriate behavior that did not result in redirection.

The Acting Commissioner highlighted the school's attrition rate—27% during the 2021-2022 academic year, with 154 student withdrawals. She noted the school's chronic absenteeism had sharply increased—from 12.6% in 2020-2021 to 49.9% in 2021-2022—and found the school lacked a strategy to address this issue. She also noted the school's suspension and expulsion policies were inconsistent with state law and regulations. Furthermore, the school's cash flow was below standards in 2019, and its enrollment variance was below standards in 2019, 2020, and 2022.

Based upon these concerns, the Acting Commissioner directed STEMCivics to submit a written remedial plan in accordance with N.J.A.C. 6A:11-2.4 to remedy the deficiencies set forth above, set measurable targets and

goals for interim progress, and describe how the school will measure the impact of its initiatives.

STEMCivics accordingly drafted and proposed to the Department in February 2023 a Remediation Plan to address these concerns. The Remediation Plan outlined various goals and overarching objectives, many of them expressed in percentages and other quantitative terms.

Following adoption of this Remediation Plan, DOE representatives met with STEMCivics (either virtually or in-person) numerous times between February 2023 and April 2024, conducting on-site visits to the school in September 2023 and April 2024.

In May 2024, STEMCivics submitted an update regarding its progress on the Remediation Plan reviewing each goal in turn. It represented that its ELA scores increased from 17.5% to 25% between the 2021-2022 and 2022-2023 academic years, and its math scores increased from 1.6% to 3%. It also represented that its chronic absenteeism rate decreased from around 50% in 2021-2022 to approximately 10% in 2023-2024. STEMCivics also represented that it exceeded its remedial goal relating to out-of-school suspensions and student attrition related to student dissatisfaction. The school additionally

included an updated parent survey from February 2024, which showed increased parent approval.

In July 2024, STEMCivics submitted an updated Remediation Plan, highlighting what steps it had taken to achieve its various goals. Among other things, STEMCivics calculated that it had increased its scores by ten percentage points in ELA and 2.8 percentage points for mathematics, and further contended it met the standard in all areas in ELA and math on the 2023 School Performance Report. In October 2024, DOE representatives conducted another on-site visit to the school.

In December 2024, STEMCivics submitted another update to its Remediation Plan. The school asserted it had outperformed Trenton Public School's ELA proficiency rates for each grade level, and that the schools' mathematics proficiency rates were comparable. STEMCivics also highlighted its claimed progress as to other metrics.

On January 31, 2025, the Commissioner issued the final agency decision revoking STEMCivics's charter. The Commissioner's decision was "based on onsite observations, document review, interviews with stakeholders, meetings with administrators and members of the board of trustees, and a review of academic performance." The Commissioner concluded that STEMCivics had

11

failed to "effectively implement the remedial plan and address the deficiencies that led to probation" and was not providing an educational program consistent with its charter. The Commissioner specifically found that STEMCivics's leadership "lack[ed] a comprehensive understanding of the school's deficiencies" and "failed to develop or implement a remedial plan that adequately addresses or offers sustainable strategies for continued improvement."

Although the Commissioner recognized that STEMCivics's NJSLA performance surpassed that of Trenton Public School students, he further noted that STEMCivics's mathematics proficiency rates failed to show "substantial and consistent growth" and were not "in alignment with its STEM-focused mission." Though the Commissioner acknowledged that STEMCivics's math proficiency rate had increased by 2.9 percentage points since the 2021-2022 school year, he ultimately deemed this improvement marginal, having exceeded Trenton Public School's performance "by only 0.5% in both years."

The Commissioner additionally concluded that the DOE site visits in 2023 and 2024 "revealed significant inadequacies in instructional quality and resource implementation." Instruction was characterized by "low-level tasks, a lack of classroom management, and minimal engagement in higher-order thinking."

12

Moreover, the Commissioner found that STEMCivics teachers did not sufficiently engage in effective classroom management when addressing disruptive student behavior. During the onsite visits, students expressed frustration and disappointment with the school's programs, viewed the school as dismissive of their needs, and reported feeling unprepared for post-secondary education or careers.

The Commissioner also found that the school's instructional activities "lacked differentiation to support the individual learning needs of students with disabilities." Similarly, the Commissioner noted "inconsistent implementation of the school's selected resources for multilingual learners and students with disabilities."

The Commissioner further identified the number of student withdrawals as a "significant concern." In particular, the most recent attrition rate at 17.4% was approximately ten to thirteen percentage points higher than any of the other five charter schools in Trenton.

The Commissioner recognized some improvement in the school's suspension rates, but he remained concerned about the annual number of students facing suspension. The Commissioner also expressed concern about the school's fluctuating teacher retention rates. In 2021-2022, the school had a

66% teacher retention rate with sixteen substitute credentials across several content areas. In 2023, that rate increased to 81%, but in 2024, the percentage decreased back down to 63%.

Citing the Performance Framework, the Commissioner questioned the financial health of the school as well as the fiscal impact on the sending districts. The Commissioner identified several deficiencies involving enrollment variances and cash flow and questioned the school's allocation of funds, noting that STEMCivics had allocated only fifty percent of its funds to instruction purposes whereas the average benchmark was sixty percent.

Based on these "persistent and pervasive challenges in organizational capacity, access and equity, instructional quality, culture and climate" and "the continuous failure to effectively measure and address identified areas of deficiency," the Commissioner directed STEMCivics to cease operations, effective June 30, 2025. The Commissioner outlined a procedure for the school's ceasing operations, including notification to students and limiting expenditures.

STEMCivics asked the Commissioner to reconsider his decision, citing reports regarding lower performance following the pandemic. The school argued that it had outperformed Trenton Public Schools on many metrics, including academic performance, graduation rate, and attendance. STEMCivics

14

accordingly requested an extension of its probationary status under N.J.A.C. 6A:11-2.4(a)(5).

On May 19, 2025, the Commissioner denied STEMCivics's motion for reconsideration and affirmed the revocation decision. STEMCivics then asked the Commissioner to stay the revocation pending appeal. Meanwhile, the school filed the present appeal and obtained an order from our court on June 6, 2025, directing the Commissioner to rule on the stay motion expeditiously pursuant to Rule 2:9-7.

On June 17, 2025, the Commissioner issued a letter denying STEMCivics's application for a stay, concluding that STEMCivics would not be able to succeed on the merits and demonstrate that his decision was arbitrary, capricious, or unreasonable. STEMCivics then moved to this court for an emergent stay pending appeal pursuant to Rule 2:9-5.

Based on the limited record supplied to us on the emergent application and the Commissioner's accelerated opposition, we granted a stay pending appeal on June 26, 2025. The Commissioner then pursued emergent relief with the Supreme Court on July 3, 2025, amplifying the record with additional and updated facts about the status quo. Among other things, the Commissioner informed the Supreme Court that students had registered at other schools, the

school's business administrator had resigned, teachers had dispersed elsewhere, equipment had been removed, and the landlord had changed the locks.

On July 11, 2025, the Supreme Court vacated our stay order, enabling the closure of the school to resume immediately.  We accelerated the appeal, received additional briefing, and heard oral argument.

III.

As a threshold matter, we decline to declare the appeal moot, despite the physical closure of the school and the dispersal of all students and staff.  At oral argument before us, appellant's counsel noted the school's desire to resume operations at a future time, if not during the current 2025-2026 academic year.  The Commissioner has not moved to dismiss the appeal as moot.  Consequently, we have adjudicated the merits of the appeal, in the public interest, and not dismissed the appeal as moot, sua sponte.  Malanga v. Twp. of W. Orange, 253 N.J. 291, 307 (2023).

It is well established that the scope of our appellate review of the Commissioner's final agency decision is limited.  In reviewing such an agency determination, the court must "respect agency action taken pursuant to authority delegated by the Legislature."  In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013).  Thus, the court should "not

16

overturn an agency determination unless it is arbitrary, capricious, or unreasonable." In re Renewal TEAM Acad. Charter Sch. (TEAM Acad.), 247 N.J. 46, 73 (2021) (citing In re Att'y Gen. L. Enf't Directives Nos. 2020-5 and 2020-6 (In re Directives), 246 N.J. 462, 489 (2021)).  This standard "recognizes the 'agency's expertise and superior knowledge of a particular field,' as well as the Judiciary's 'limited role . . . in reviewing the actions of other branches of government.'"  Id. at 74 (quoting In re Directives, 246 N.J. at 489) (omissions in original).

Thus, when reviewing an agency determination, the reviewing court "is limited to three inquiries:"

> (1) whether the agency's action violates express or implied legislative policies—i.e. the law; (2) whether the record contains substantial evidence to support the agency's findings; and (3) whether the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Alcantara v. Allen-McMillan, 475 N.J. Super. 58, 64 (App. Div. 2023) (citing Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)).]

So long as the agency has satisfied these criteria, then the reviewing court owes it substantial deference, even if it would have reached a different result.  Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).  The burden is on the party challenging the agency action—here, STEMCivics—to show that the

administrative determination was arbitrary, capricious, or unreasonable. TEAM Acad., 247 N.J. at 73-74 (citing In re Directives, 246 N.J. at 489).

Having applied these standards, we conclude that STEMCivics has not met its heavy burden. There is ample substantial credible evidence in the record to support the Commissioner's revocation of the school's charter. Although the school exhibited some discrete areas of improvement during its probationary period, these improvement areas do not establish that, on the whole, the revocation was arbitrary, capricious, or unreasonable.

The predominant theme of STEMCivics's arguments is that the Commissioner and the DOE should have done more during the probationary period to advise the school that they were dissatisfied with the extent of its progress. Yet there is nothing in the applicable statutes or regulations that would require STEMCivics to have received any such intermittent notifications. See N.J.S.A. 18A:36A-16 to -17; N.J.A.C 6A:11-2.4.

Insofar as there appear to be disagreements between the parties as to the meaning or intent underlying certain facets of the Remediation Plan, we bear in mind that STEMCivics drafted the Plan. It therefore had the ability to express the Plan in terms that were clear and attainable. As a general principle, the law construes documents in a manner that recognizes the drafter's ability to compose

the language selected and to include or omit terminology that might be to the drafter's advantage. See, e.g., In re Est. of Miller, 90 N.J. 210, 221 (1982); see also Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 208 (2017).

We also defer to the Commissioner's reasonable rejection of STEMCivics's attempts to justify its shortcomings in mathematics and teacher hiring because of the COVID-19 pandemic. Public schools and other charter schools in the State were challenged by the same post-pandemic circumstances. Notwithstanding some improvement on this front, it is ironic that a charter school named and marketed as a "STEM" (Science, Technology, Engineering, and Math)-focused institution continued to struggle in its math performance.

We do acknowledge the school's contention that the DOE did not specifically reveal how its performance during the probationary period fell short under the Performance Framework. Even so, STEMCivics's cumulative failures in meeting many of the targets of its own Remediation Plan are, in of themselves, sufficient to justify the Commissioner's final agency decision.

In sum, although we appreciate the real-world consequences of closing a charter school that had enrolled over 600 students, the record is more than

sufficient to uphold the Commissioner's application of the Department's expertise.

To the extent that we have not discussed them, all other arguments presented by appellant lack sufficient merit to warrant discussion. R. 2:11-3 (e)(1)(D)-(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2041-24